IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| BOBBY LUCKY, } | | |
| TDCJ-CID NO.1048046, } | | |
| Plaintiff, } | | |
| } | | |
| v. } | | CIVIL ACTION G-05-166 |
| } | | |
| KELLI WARD, *et al.*, } | | |
| Defendants. } | | |

OPINION ON DISMISSAL

Plaintiff, a state inmate proceeding *pro se* and *in forma pauperis*, has filed a complaint pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights by state officials. (Docket Entry No.1). Plaintiff has also filed a supplement and an amendment to his complaint (Docket Entries No.10, No.14, No.28), two responses to the Court's request answer to interrogatories (Docket Entry No.31, No.33), and a response to an order granting defendants' Motion for a Rule 7 Reply to their defense of qualified immunity. (Docket Entry No.46). Pending is defendants' Motion for Summary Judgment (Docket Entry No.47). Plaintiff has not filed a response to the motion.

For the reasons to follow, the Court will grant defendants' motion and dismiss this case with prejudice.

I. CLAIMS

Plaintiff contends that he is the victim of retaliation by state officials at the Wayne Scott Unit because he filed suit against personnel at another TDCJ unit.[1] Plaintiff claims in

---

[1] Plaintiff claims that he underwent surgery for a bowel obstruction, which was somehow related to consuming food at the John Middleton Unit, where plaintiff was confined. (Docket Entry No.1). When plaintiff returned to the

retaliation for filing such suit, defendants assigned him to the garden squad, which caused two war-time bullets encased in his body to shift. He further claims that defendants denied him surgery to remove the bullets from his body and allowed field officers to file numerous unwarranted disciplinary charges against him because he filed grievances against them. (Docket Entry No.1).

Plaintiff filed the pending suit on March 8, 2005. (*Id*.). He seeks an order directing TDCJ officials to re-assign him from field work to building utility work and an order directing UTMB officials to surgically remove the two bullets from his body. (*Id*.). Plaintiff also seeks compensatory and punitive damages against defendants because they have retaliated against him for his use of the grievance program and forced him to work in violation of his work restrictions and injuries. (Docket Entry No.24).

Plaintiff indicates that he is suing defendants as follows:

1. Dr. Bruce Smith for malpractice because he showed deliberate indifference by giving plaintiff the least treatment possible, allowed TDCJ officials to change plaintiff's work status without a physical examination and in violation of plaintiff's work restrictions;

2. Chuma Anaduaka for mismanagement of plaintiff's health care as a state prisoner by failing to investigate plaintiff's complaint, for abiding by Smith's medical decisions, and by conspiring to work a job in excess of plaintiff's medical restrictions;

3. Assistant Warden Kathryn Bell for allowing field force officers to write unwarranted disciplinary infractions against plaintiff for his use of the inmate grievance system, for conspiring with the Unit Classification Department and medical department to remove plaintiff's medical restrictions and place him in the fields, and for denying his Step 1 Grievance;

---

Middleton Unit to recover, he filed a complaint regarding conditions in the Unit's infirmary. (*Id*.). Plaintiff claims thereafter, some unnamed persons at the Unit harassed and retaliated against him for months in unspecified ways as he continued to file complaints. (*Id*.). Plaintiff was transferred to the Wayne Scott Unit, which he contends was a retaliatory move. (*Id*.).

2

4. Warden Trinci for conspiring with Bell, Smith, Anaduaka, and field officers to harm plaintiff by forcing him to work beyond his medical restrictions and causing his bullets to move, for failing to override plaintiff's unwarranted disciplinary convictions and the punishments he received, and for failing to override decisions of medical providers as plaintiff grieved;

5. Program Specialist Kelli Ward for failing to conduct an appropriate investigation into plaintiff's grievances and for denying plaintiff's grievances regarding his medical care, thereby denying him the appropriate medical care and allowing others to force him to work in excess of his medical restrictions and allowing him to be punished for the same.

(Docket Entry No.44).

Defendants Ward, Trinci, Anaduaka, Bell, and Smith move for summary judgment on grounds that they are entitled to Eleventh Amendment immunity and qualified immunity. (Docket Entry No.47).

## II. STANDARD OF REVIEW

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

## III. DISCUSSION

The Civil Rights Act of 1866 creates a private right of action for redressing the violation of federal law by those acting under color of state law.  42 U.S.C. § 1983; *Migra v.Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984).  Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights conferred elsewhere.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  To prevail on a section 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).  A section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.  *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).  Thus for plaintiff to recover, he must show that the defendants deprived him a right guaranteed by the Constitution or the laws of the United States.  *See Daniels v. Williams*, 474 U.S. 327, 329-31 (1986).

### A. Compensatory Damages

#### 1. Eleventh Amendment Immunity

Suits for damages against the state are barred by the Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985).  Under the Eleventh Amendment, an unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.  *Edelman v. Jordan,* 415 U.S. 651, 663 (1974).  Absent waiver, neither a state nor agencies acting under its control are subject to suit in federal court. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993).  This bar

remains in effect when state officials are sued for damages in their official capacity. *Cory v. White,* 457 U.S. 85, 89 (1982).

All defendants in this case are either employees of the State of Texas or state agencies; therefore, plaintiff's claims against all defendants in their official capacities are barred by the Eleventh Amendment. *See Will v. Michigan Dept of State Police*, 491 U.S. 58, 71 (1989) (suit not against official but state office); *Oliver v. Scott*, 276 F.3d 736, 742, 742 n. 5 (5th Cir. 2002). Accordingly, to the extent that plaintiff seeks monetary damages on claims against defendants in their official capacities; plaintiff's claims are barred by the Eleventh Amendment.

## 2. Qualified Immunity

Defendants move for summary judgment on the ground that they are entitled to qualified immunity. (Docket Entry No.47). Qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "Whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law." *Fraire v. City of Arlington*, 957 F.2d 1268, 1272 (5th Cir. 1992).

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the allegations establish a constitutional violation, the court

next considers whether the defendants' actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope*, 536 U.S. at 739 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002). Even so, on summary judgment, the court must look to the evidence before it in the light most favorable to the plaintiff when conducting a qualified immunity inquiry. *Id.* at 323.

### a. Medical Care

Plaintiff contends that the two bullets that he received from enemy fire in Vietnam shifted from his neck to his back and from his lower back to his groin following his assignment to the garden squad in early 2003. (Docket Entry No. 28, attachment). Plaintiff claims that he suffered severe pain and numbness in his lower back and severe headaches and pain in his neck and shoulder when he was forced to work in the garden during the hottest part of the summer. (*Id.*). Plaintiff claims that he complained to Dr. Bruce Smith because the pain was unbearable; Smith examined him but did not order x-rays. Instead, Smith told him that the work was within his restrictions and he would benefit from the physical labor. (*Id.*). Plaintiff claims that after he pressed his complaints to Warden Trinci, Trinci arranged for Smith to send plaintiff to a specialist in Galveston. (*Id.*). Plaintiff contends that x-rays showed the two bullets; he also contends that the specialists advised him that major surgery was required to remove them. (*Id.*). Plaintiff claims the specialists also told him to talk with Unit providers about his medical restrictions and job assignment. (*Id.*). Plaintiff contends when he returned to the Unit, he was

informed that the bullets were not life-threatening and no surgery would be performed because of the expense. (*Id.*). Plaintiff further contends that his medical restrictions and job assignment were not changed. (*Id.*).

Plaintiff, however, indicates in his response to the Court's Order for Answers to Interrogatories that after he returned to the Unit, Smith added a medical restriction of no lifting greater than fifty pounds on April 2, 2003. (Docket Entries No.31, No.33, pages 12, 23). Later, in the same response, plaintiff notes that Smith added restrictions on September 5, 2003, of no walking over 300 yards, not lifting over twenty pounds, no squatting, limited sitting, and no reaching over his shoulders before Smith arranged for him to see specialists in Galveston in November, 2003.[2] (Docket Entry No.33, page 23).

Plaintiff indicates that he was assigned to the garden squad from March 24, 2003, to April 22, 2003, and from November 20, 2003 to January 5, 2004. (*Id.*, page 24). The Court notes that neither assignment falls within the summer months. The Court further notes that in all, plaintiff was assigned to the garden squad for approximately three months.

Plaintiff also claims he filed numerous grievances, which were denied.[3] (*Id.*). He contends that Trinci and Bell told him that being disabled in the real world did not mean that he

---

[2] Plaintiff indicates that he is still subject to the same restrictions. (Docket Entry No.33, page 23).

[3] In Step 1 Grievance No.2005063492 dated December 12, 2004, plaintiff grieved that his problems began in 2003 when Dr. Smith changed his work restrictions and plaintiff was moved from the building utility squad to the garden squad, which required him to work four days a week. (Docket Entry No.10, attachment). Plaintiff claims he told Smith that he was a disabled veteran and fifty-seven years old and on stomach medication. (*Id.*). Plaintiff claims that Smith told him that just because plaintiff was disabled in the world did not make him disabled in TDCJ and that working in the fields would be good exercise. (*Id.*). Plaintiff further claims that a large knot came up between his legs and he cut it open with a razor blade. (*Id.*). Plaintiff claims that the bullet was inside the knot and that he tried to cut it out but the pain was too great in his back, stomach and testicles; therefore, he was unable to turn out for work in the field force. (*Id.*). Plaintiff complained to Warden Trinci, who ordered a complete physical examination. (*Id.*). X-rays showed that the two bullets in plaintiff's body had shifted from their original position to new locations. (*Id.*). Plaintiff attributed this shift from the hard work he was required to perform in the field force. (*Id.*). In October, 2003, Smith scheduled plaintiff an appointment with specialists in Galveston. (*Id.*). In November, 2003, three different specialists told him that he needed major surgery to remove the bullets and they would schedule

was disabled in prison and they could work him in the fields until he was ninety-nine years old. (*Id.*). Plaintiff claims that Kelli Ward denied his grievances. (*Id.*).

Plaintiff further complains that although Dr. Smith prescribed Ibuprofen for pain, antacid and other medication for his stomach problems, Smith refused to prescribe Lamisil for plaintiff's toe fungus and Nexium for his acid reflux because TDCJ has determined that it is too expensive to purchase. (Docket Entries No.31, No.33, pages 13, 26-27). Plaintiff complains that Smith has prescribed medication to treat his symptoms but not to cure his pains and problems. (*Id.*).

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must prove objectively that he was exposed to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The plaintiff must also show that prison officials acted or failed to act with deliberate indifference to that risk. *Id.* at 834. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the prison officials were actually aware of the risk, yet consciously disregarded it. *Id.* at 837, 839; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002). "[F]acts underlying a claim of 'deliberate indifference' must clearly evince the medical need in question and the alleged official dereliction." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the

---

surgery at a later date. (*Id.*). Plaintiff claims he asked Smith to schedule such surgery and told him of the pain he suffered and the disciplinary convictions he received in retaliation because he was unable to do the field work. (*Id.*). Plaintiff claims that Smith and Trinci told him that his physical condition was not life-threatening and under TDCJ policy, TDCJ would not pay for the surgery. (*Id.*). Plaintiff claims that Smith and Wardens Trinci and Bell told him to go to work in the fields. (*Id.*). In response, Warden Bell noted the location of the bullet and that noted that it was not life threatening; she also noted that his medical restrictions had been changed on November 2, 2004, to accommodate such condition. (*Id.*). Plaintiff's Step 2 Grievance complaining of the refusal to perform such surgery was denied.

part of the defendants." *Id.*  Mere negligence does not constitute a section 1983 cause of action. *Estelle*, 429 U.S. at 106; *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000) ("the subjective intent to cause harm cannot be inferred from a ... failure to act reasonably").

Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05.  Delay in obtaining medical treatment does not constitute deliberate indifference unless it is shown that the delay resulted in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

To the extent that plaintiff complains that Dr. Smith, Practice Manager Anaduaka, and Unit personnel blocked surgery for the bullets, UTMB medical records show that UTMB physicians did not recommend surgical removal of his bullets, as plaintiff alleges in his pleadings.[4]  UTMB Physician's notes dated November 17, 2003, reflect that plaintiff had a history of multiple gun shot wounds and that he desired removal of the bullets. (Docket Entry No.47-3, page 3, Exhibit A).  Plaintiff proffers nothing to contravene this medical record.

To the extent that plaintiff complains that Dr. Smith did not provide the cure for his medical conditions, plaintiff concedes that Dr. Smith prescribed some treatment but not the treatment plaintiff thought he should receive.  Plaintiff's dissatisfaction with the medical treatment he received does not mean that he suffered deliberate indifference. *See e.g., Norton v. Dimazana*, 122 F.3d 286, 291-92 (5th Cir. 1997); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (holding inmate's "disagreement with his medical treatment" not sufficient to show

---

[4] The UTMB physician noted that she detected two palpable bullets-one in the left intra-pubic region and the other in the back. (Docket Entry No.47-3, page 3, Exhibit A).  The physician found "no surgical indication at this time for bullet removal." (*Id.*).  Plaintiff was referred to general medicine for evaluation of other complaints. (*Id.*).

Eighth Amendment violation); *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979) (finding "[m]ere negligence, neglect or medical malpractice is insufficient" to show Eighth Amendment violation).

Because plaintiff has not shown a genuine issue of material fact on his Eighth Amendment claim, defendants are entitled to qualified immunity.

### b. Job Assignment

Plaintiff claims that defendants required him to perform strenuous tasks on the garden squad that were beyond his physical capacity in spite of doctor's orders and medical restrictions, and that such tasks caused him to suffer pain and agony from the bullets that were dislodged from their original locations in his body.

"[P]rison work requirements which compel inmates to perform physical labor which is beyond their strength, endangers their lives, or causes undue pain constitutes cruel and unusual punishment." *Howard v. King,* 707 F.2d 215, 219 (5th Cir. 1983). If a prison official knowingly assigns an inmate to a job he or she realizes may significantly aggravate a serious physical ailment, then such a decision would constitute deliberate indifference to serious medical needs that may violate the Eighth Amendment's prohibition against cruel and unusual punishment. *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989); *see also Calhoun v. Hargrove*, 312 F.3d 730, 734-35 (5th Cir. 2002) (finding claim sufficient to survive a motion to dismiss where prison official purportedly knew about a four hour medical work restriction but forced inmate to work long hours, which raised blood pressure to dangerously high levels). A negligent assignment to work that is beyond the prisoner's physical abilities, however, is not unconstitutional. *Jackson*, 864 F.2d at 1246. Moreover, a mere disagreement about a work

assignment does not amount to deliberate indifference. *See e.g. Douglas v. McCasland*, 194 Fed. Appx. 192 (5th Cir. 2006) (finding claim frivolous where plaintiff fails to show that defendants knowingly assigned him work that would significantly aggravate his medical condition); *Freeman v. Alford*, 48 F.3d 530 (5th Cir. 1995) (not designated for publication). Moreover, to succeed on a civil rights claim, plaintiff must show that his job assignment significantly aggravated a serious physical ailment. *Jackson*, 864 F.2d at 1246-47.

In this case, plaintiff's pleadings and attachments do not reflect that Dr. Smith or any other physician issued an order specifically precluding plaintiff from performing tasks associated with the garden squad. (Docket Entry No.33, page 28). Moreover, plaintiff's pleadings show that Dr. Smith was responsive to plaintiff's complaints of physical infirmities with respect to medical restrictions. The record shows that plaintiff was assigned to the garden squad for eighteen days from late March, 2003 to mid-April 2003. (Docket Entries No.33, page 24; No.47, page 9). In early April, Dr. Smith added a medical restriction of no lifting greater than fifty pounds. (Docket Entry No.33, pages 12, 23). In early September, 2003, Smith added restrictions of no walking over 300 yards, not lifting over twenty pounds, no squatting, limited sitting, and no reaching over his shoulders. (*Id.*, page 23). In November, plaintiff was seen by physicians at UTMB. (Docket Entry No.47, Exhibit A). On November 20, 2003, he was re-assigned to the garden squad for 146 days until early January, 2004. (Docket Entries No. 33, page 24; No.47, page 9).

Moreover, the record does not show that defendants assigned plaintiff to the garden squad with knowledge that such job might significantly aggravate the problems associated with the bullets. Plaintiff's pleadings show that he did not work in the fields during

11

the hottest part of the summer, but he worked in the garden squad in the early spring and in the late fall. Plaintiff's pleadings also show that defendants Smith, Trinci, and Bell thought that the physical exercise would be good for him. Moreover, the record does not affirmatively show that plaintiff's assignment to the garden utility squad aggravated plaintiff's physical ailments or that his medical issues were attributable to conditions under which he labored.

Because plaintiff has not shown a genuine issue of material fact on his Eighth Amendment job assignment claim, defendants are entitled to qualified immunity.

### c. Retaliation

Plaintiff contends that once defendants became aware of a lawsuit that he filed against personnel on the John Middleton Unit, they began to harass and retaliate against him. (Docket Entry No.1). He contends that Practice Manager Anaduaka and Dr. Smith allowed the Unit Classification Committee to override plaintiff's medical restrictions and to place his life in danger, that Wardens Trinci and Bell and Classification Committee member Doe reassigned him from the building utility squad to the garden squad against his medical restrictions, and that Wardens Trinci and Bell authorized field force officers to harass and retaliate against him for the grievances that he filed against the officers. (Docket Entries No.1, No. 44, page 1). Plaintiff further contends that unnamed field force workers wrote fifteen false disciplinary cases against him, which caused him to be segregated from other inmates, to lose good conduct credits, and to suffer a reduction in custody level.[5] (Docket Entry No.1).

---

[5] In a supplement to the complaint, plaintiff complains of continued harassment and retaliation in the form of a disciplinary conviction based on a false charge of refusing to turn out for work on April 1, 2005. (Docket Entry No.10). Plaintiff claims such conviction was the sixteenth conviction for the same offense. (*Id.*). He contends that Lt. Green, who is not a defendant in this case, threatened further disciplinary action regardless of plaintiff's medical condition, if plaintiff did not turn out for work. Plaintiff claims Green said "until Warden Trinci or Warden Bell say different[,] it is [Green's] job to force [plaintiff] to work." (*Id.*, page 4). Plaintiff further claims that Green told him that plaintiff could grieve such convictions but the grievances would be trashed. (*Id.*) Plaintiff also complains that

To state a valid claim for retaliation under section 1983, an inmate must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). He must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). The inmate must allege facts showing that a defendant possessed a retaliatory motive. *See Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir. 1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985). He "must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Id.* (citation omitted). Moreover, he must show that "but for" a retaliatory motive, the defendants would not have engaged in the action. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

Plaintiff's retaliation claim suffers from a lack of intent and causation. Neither plaintiff's pleadings nor the record reflect direct evidence of retaliation or show a chronology of events from which defendants' intent to retaliate might be inferred. The record does not show that defendants were aware of plaintiff's lawsuit against the officials at John Middleton Unit, that they deprived him of medical care or allowed field officers to write false disciplinary cases against him or to harass him, or that they changed his job assignment because he filed lawsuits or wrote grievances against unit personnel. In short, plaintiff fails to show the existence of a material fact question with respect to his retaliation claims. Accordingly, defendants are entitled to qualified immunity on such claims.

---

as a result of the punishment imposed for such convictions, *i.e.*, segregation, commissary and cell restriction, etc, he has been denied the nourishment to stay healthy. (*Id.*).

### d. Conspiracy

In an amended pleading, plaintiff claims that because Program Specialist Kelli Ward denied his grievances, he filed a complaint with the Director in charge of Stop Prison Abuse Project, who contacted the Office of the Inspector General. (Docket Entry No.28). Plaintiff claims that in late 2004, a representative of the Office of the Inspector General interviewed him and promised that his job assignment would be changed. (*Id*.). Plaintiff claims his assignment was changed for a short time and that he continued to receive disciplinary convictions for refusing to work. Plaintiff contends that Wardens Trinci and Bell conspired to change his job assignment back to field work because he complained to the Stop Prison Abuse Project. (*Id*.).

To establish a § 1983 cause of action based upon conspiracy, a plaintiff must allege facts that, liberally construed, establish (1) defendants' participation in a conspiracy involving state action, and (2) a deprivation of his civil rights in furtherance of the conspiracy by a party to the conspiracy. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992). Plaintiff must also show that the conspirators had an agreement to commit an illegal act that resulted in the plaintiff's injury. *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982); *Thomas v. City of New Orleans*, 687 F.2d 80, 83 (5th Cir. 1982).

The record does not reflect any evidence of an agreement among defendants to change plaintiff's job assignment, to deny him adequate medical care, or to retaliate against him by allowing officers to file false disciplinary cases or to harass him for any reason. Accordingly, defendants are entitled to qualified immunity.

### e. Personal Involvement

Plaintiff complains that Program Specialist Kelli Ward consented to the wrongdoing by Wayne Scott personnel when she denied his Step 2 grievances complaining of their actions and omissions. (Docket Entry No.1). Plaintiff also complains that Practice Manager Chuma Anaduaka mismanaged his health care issues by failing to investigate his complaints and abiding by Dr. Smith's medical decisions. (Docket Entry No.44). He further complains that Wardens Trinci and Bell denied his grievances and failed to override his unwarranted disciplinary convictions. (*Id.*). He claims that both wardens were responsible for the actions of Unit field officers because they allowed the officers to write unwarranted disciplinary cases against him. (*Id.*).

Liability based on supervisory capacity exists only if supervisor is personally involved in constitutional deprivation or a sufficient causal connection exits between the supervisor's wrongful conduct and the constitutional violation. *See Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). In this case, the record does not show that Program Specialist Ward, Warden Trinci, Assistant Warden Bell, Practice Manager Anaduaka, or Classification Committee member Doe had any personal involvement in plaintiff's medical care or that Ward, Trinci, Bell or Doe held a supervisory position over medical personnel. Likewise, the record does not show that Practice Manager Anaduaka had supervisory control over Dr. Smith or that Anaduaka instituted a policy that would deprive plaintiff of his right to medical care. Nor does the record show that defendants Trinci, Bell, or Ward were personally involved in the Unit's disciplinary actions, except to the extent that they responded to plaintiff's grievances. An inmate does not have a constitutionally protected liberty interest in having grievances or complaints resolved to

his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005). Moreover, the record does not show that defendants Trinci, Bell, or Ward authorized or allowed field officers to write false disciplinary cases against plaintiff or that they instituted a policy that provided for such unconstitutional activities.

To the extent that plaintiff complains of the actions of Trinci, Bell, Doe, Anaduaka, and Ward in their capacity as supervisors, he fails to show the existence of a genuine issue of material fact on such claims. Accordingly, defendants are entitled to summary judgment.

### C. Punitive Damages

To warrant punitive damages, plaintiff must allege facts showing that defendants' conduct was egregious or reprehensible. *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). Punitive damages may be awarded in § 1983 cases when the defendant's conduct "is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights. . . . The latter standard requires recklessness in its subjective form, *i.e.*, a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations." *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003).

Plaintiff states no facts to show that any defendant acted with reckless, callous, or criminal indifference to his constitutional rights. Therefore, he fails to show any entitlement to punitive damages.

### D. Injunctive Relief

Plaintiff seeks an order directing TDCJ officials to assign him to building utility work and an order directing UTMB officials to surgically remove the bullets from his body.

(Docket Entry No.1). He also seeks a preliminary injunction and temporary restraining order against Unit personnel to stop the unwarranted harassment, retaliation, and false disciplinary charges. (Docket Entry No.10).

Qualified immunity is not a defense to a claim for injunctive relief. *Yates v. Stalder*, 217 F.3d 332, 333, n2. (5th Cir. 2000). A party seeking a temporary restraining order or preliminary injunction must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the preliminary injunction will not disserve the public interest. *See Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005). Injunctive relief in the form of "superintending federal injunctive decrees directing state officials" is an extraordinary remedy. *Morrow v. Harwell*, 768 F.2d 619, 627 (5th Cir. 1985). An injunction "should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *PCI Transportation Inc. v. Fort Worth & Western Railroad Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (citations omitted).

In this case, plaintiff has not shown a substantial likelihood that he will prevail on the merits of his claims given that the record does not reflect an issue of genuine material fact that defendants have violated his constitutional rights. Moreover, plaintiff cannot obtain injunctive relief from a supervisor solely on a theory of respondeat superior. *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 600 n.2 (5th Cir. 2001). Accordingly, defendants are entitled to summary judgment on plaintiff's claims for equitable relief.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1. Defendants' motion for summary judgment (Docket Entry No.47) is GRANTED. All claims against all defendants are DENIED. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

2. All pending motions, if any, are DENIED.

It is so ORDERED.

SIGNED at Houston, Texas, this 25th day of September, 2008.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE